# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN JEFFERY RICHSON-BEY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>BELL,<br><br>　　　　　Defendant. | Case No.  1:22-cv-00447-BAM (PC)<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE FIRST AMENDED COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

　　　　Plaintiff Sean Jeffery Richson-Bey ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  Plaintiff's complaint is currently before the Court for screening.  (ECF No. 1.)

**I.　　Screening Requirement and Standard**

　　　　The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

　　　　A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

1

conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## II.     Plaintiff's Allegations

Plaintiff is currently housed at California State Prison, Corcoran ("CSP – Corcoran") in Corcoran, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Celia Bell, Chief Executive/Medical Officer of California Correctional Health Care Services ("CCHCS") at CSP – Corcoran; (2) John Doe,[1] nurse employed by CCHCS at CSP – Corcoran; and (3) Jane Doe, nurse employed by CCHCS at CSP – Corcoran. Plaintiff alleges as follows:

On November 9, 2021, Plaintiff attended a turn around appointment at Bakersfield Golden Eye Center for follow-up eye specialist care after a preliminary diagnostic discovered retinal tears in both eyes. On November 14, 2021, Plaintiff was approached at cell front by Security & Escort Officer Chacon inquiring if Plaintiff would undergo COVID-19 testing, to which Plaintiff negatively replied. Soon after her departure, Plaintiff was approached by 3C01 Floor Officer Wright indicating per communication with unidentified CCHCS COVID-19 Command Center personnel that Plaintiff was to be quarantined for twenty-one days, commencing immediately, for failing to test, even though Plaintiff was not provided notice of cause for testing, adherence to

---

[1] Plaintiff attempts to bring claims against five separate Doe defendants identified only as John Doe or Jane Doe, all nurses employed by CCHCS at CSP – Corcoran. (ECF No. 1, p. 2.) However, as Plaintiff has not provided any information to distinguish between each John or Jane Doe, only two are listed here.

2

COVID-19 guidelines/protocol, and administering agents did not engage with Plaintiff directly. Upon Plaintiff's information and belief, nursing staff filed a refusal form qualifying Plaintiff for quarantine, that Plaintiff had purportedly refused to sign.

On December 14, 2021, Plaintiff attended follow-up care at Golden Eye Center, turn around appointment. On December 17, 2021, Plaintiff was approached by a nurse, accompanied by the 3C01 Floor Officer, inquiring if Plaintiff would test. Plaintiff requested notice of cause, to which the unidentified nurse claimed not to know. Plaintiff refused. Shortly after their departure, Plaintiff was quarantined for twenty-one days commencing immediately, reportedly per CCHCS personnel, for refusing testing. Upon Plaintiff's information and belief, nursing staff filed a refusal form qualifying Plaintiff for quarantine, that Plaintiff had purportedly refused to sign.

On February 22, 2022, Plaintiff attended Golden Eye Center, turn around appointment, and received laser treatment to repair torn retina in right eye. On February 27, 2022, Plaintiff was approached at cell front by an unidentified nurse accompanied by 3C01 Floor Officer Wright, inquiring if Plaintiff would COVID-19 test. Plaintiff requested cause, to which the nurse claimed not to know. Plaintiff requested a refusal form to note his consent to test under protest due to his previous encounters resulting in quarantine. The nurse retired, purportedly to determine cause of testing, and returned with the form. The nurse claimed to have discovered the cause for testing was an impending court date, thereby gaining Plaintiff's consent without further protest. Plaintiff discovered via 3C01 Floor Officer Wright, et al., and Correctional Counselor (CCI) Patterson there was no such date pending.

On March 15, 2022, Plaintiff attended turn around appointment at Golden Eye Center for follow-up care. On March 20, 2022, Plaintiff was approached at cell front by an unidentified nurse, accompanied by Security & Escort Officer Ibarra, inquiring if Plaintiff would COVID-19 test. Plaintiff requested cause and was informed that it was due to his appointment. Plaintiff requested a refusal form to document consent under protest prior to compliance.

On March 21, 2022, Plaintiff was approached by unidentified nursing staff inquiring if he would COVID-19 test. Plaintiff requested a refusal form, where he documented the events of March 15 and March 20, 2022, after learning the cause for testing was those events and thereafter

3

refused consent.

On September 20, 2021, November 4, 2021, November 7, 2021, and other occasions, Plaintiff notified CCHCS/Administrative authorities via Inmate Request for Interview, Health Care Services Request, and Public Declaration of Exemption from Unlawful Demand for Medical Tests, Screenings, Vaccinations and Immunizations conflicting with religious belief, exercise, practice and liberties as Moorish-American Moslem/National.  On November 14, 2021, December 17, 2021, February 28/March 1, 2022, and March 20, 2022 via administrative Health Care grievances, Plaintiff notified CCHCS administrative authorities of abuses and violations of his right to medical care and violations of Plaintiff's religious beliefs and practice(s) as Moorish-American Moslem.  Defendant Celia Bell, the Chief Executive/Medical Officer of CCHCS, has been non-responsive.

Plaintiff claims that Defendant Bell's non-response/inaction to the complaints he filed violated Plaintiff's rights under the Eighth Amendment, the First Amendment, the 1836 United States – Morocco Treaty of Peace and Friendship ("Treaty of Peace and Friendship"), and the Fifth Amendment.

Plaintiff claims that John Doe's quarantine of Plaintiff for failing/refusing COVID-19 testing violated his rights under the Eighth Amendment, the Treaty of Peace and Friendship, the First Amendment, and the Fifth Amendment, with respect to Plaintiff's refusal of the demand for testing on November 14, 2021 and the subsequent quarantine of Plaintiff on December 17, 2021

Plaintiff claims that Jane Doe's procurement from Plaintiff of a COVID-19 testing sample by fraud on February 27, 2022 violated his rights under the Eighth Amendment, the Treaty of Peace and Friendship, and the First Amendment.

Plaintiff claims that Jane Doe's procurement from Plaintiff of a COVID-19 testing sample under protest violated his rights under the Eighth Amendment, the Treaty of Peace and Friendship, the First Amendment, the Fourth Amendment, and the Fifth Amendment.

Plaintiff requests judgment against each defendant in their official and individual capacities, a declaration that the acts and omissions described herein violated Plaintiff's religious rights as a Moorish-American Moslem and does not serve a compelling government interest,

4

injunctive relief terminating the practice of demanding testing, compensatory and punitive damages, a jury trial, and costs.

### III.  Discussion

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief.  As Plaintiff is proceeding *pro se*, he will be granted leave to amend his complaint to the extent that he can do so in good faith.  To assist Plaintiff, the Court will provide the pleading and legal standards that appear relevant to his claims.

#### A.  Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Although Plaintiff's complaint is short, many of Plaintiff's allegations simply recite the elements of various causes of action without supporting factual allegations, or state in a conclusory fashion that Plaintiff's rights were violated.  If Plaintiff chooses to file an amended complaint, it must include factual allegations identifying what happened, which Defendant was involved, and how the actions or inactions of each Defendant violated Plaintiff's rights.

#### B.  Linkage

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  *See*

5

1  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The
2  Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional
3  right, within the meaning of section 1983, if he does an affirmative act, participates in another's
4  affirmative acts or omits to perform an act which he is legally required to do that causes the
5  deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

6        As noted above, Plaintiff has not provided any information to allow the Court to
7  determine if there are multiple John Doe and Jane Doe defendants (such as John Doe 1, John Doe
8  2, etc.) or if there is only one John Doe and one Jane Doe who interacted with Plaintiff on
9  multiple occasions. As a result, Plaintiff has not made clear which defendant is responsible for
10 which act or omission. In contrast, Plaintiff's only factual allegations against Defendant Bell are
11 that she did not take any action in response to any of his complaints, but it does not appear that
12 she was otherwise involved in any way in the incidents at issue. In any amended complaint,
13 Plaintiff must link each individual Defendant to a specific act or omission that violated Plaintiff's
14 rights.

15       **C.**     **Eleventh Amendment Immunity**

16       Plaintiff is attempting to sue defendants for monetary damages in their official and
17 individual capacities. Plaintiff may not pursue his claims for monetary damages against any
18 named defendants in their official capacities. "The Eleventh Amendment bars suits for money
19 damages in federal court against a state, its agencies, and state officials in their official
20 capacities." *Aholelei v. Dep't. of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations
21 omitted). However, the Eleventh Amendment does not bar suits seeking damages against state
22 officials in their personal capacities, *Hafer v. Melo*, 502 U.S. 21, 30 (1991); *Porter v. Jones*, 319
23 F.3d 483, 491 (9th Cir. 2003), or suits for injunctive relief brought against state officials in their
24 official capacities, *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 680 n.2 (9th Cir. 1991). Thus,
25 Plaintiff may only proceed in this action for monetary damages against defendants in their
26 individual capacities.

27 ///
28 ///

### D. Supervisory Liability

To the extent Plaintiff seeks to hold any Defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### E. First Amendment – Free Exercise of Religion

Convicted inmates "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (internal quotations and citation omitted). "That is,

1   a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus
2   upon such exercise." *Id.* (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024,
3   1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts
4   substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation
5   omitted).

6       Plaintiff fails to state a cognizable First Amendment claim. Plaintiff has not alleged that
7   the COVID-19 testing requirement in any way burdened the practice of his religion, much less
8   that it placed a substantial burden on the practice of his religion.

9       **F.  Fourth Amendment – Searches**

10       "The Fourth Amendment prohibits only unreasonable searches." *Bell v. Wolfish*, 441 U.S.
11   520, 558 (1979). "Whether a search is reasonable under the Fourth Amendment requires a case-
12   by-case 'balancing of the need for the particular search against the invasion of personal rights that
13   the search entails . . . .' " *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir.
14   2011) (quoting *Bell*, 441 U.S. at 559). In reviewing such a claim, the Court must consider " 'the
15   scope of the particular intrusion, the manner in which it is conducted, the justification for
16   initiating it, and the place which it is conducted.' " *Thompson v. Souza*, 111 F.3d 694, 700 (9th
17   Cir. 1997) (quoting *Bell*, 441 U.S. at 559).

18       Plaintiff's complaint fails to demonstrate that the institution's requirement of COVID-19
19   testing (apparently in lieu of a twenty-one-day quarantine) was unreasonable. Plaintiff also does
20   not allege that prison officials conducted these tests—or searches—with an intent to punish or
21   that the searches were unrelated to a legitimate governmental objective. Nor does he make any
22   allegations from which "punitive intent may be inferred." *Byrd*, 629 F.3d at 1140.

23       Further, courts have held that prisons have a legitimate, and even compelling,
24   governmental interest in regularly testing prisoners for COVID-19 to meet their obligations to
25   control contagion and to protect other prisoners and staff. *Fialho v. Auld*, No. 2:21-cv-1698 DB
26   P, 2021 WL 4991734, at *4 (E.D. Cal. Oct. 27, 2021) (quoting *Webb v. Johnson*, No. 4:21-cv-
27   3042, 2021 WL 2002712, at *6 (D. Neb. May 19, 2021)).
28   ///

**G.     Eighth Amendment**

      1.     <u>Deliberate Indifference to Serious Medical Needs</u>

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm.  *Jett*, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to

9

deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).  Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

Plaintiff has not alleged how the requirement that he undergo COVID-19 testing, or be quarantined if he refused testing, violated Eighth Amendment rights.  In any amended complaint, Plaintiff must clearly and succinctly state what happened, when it happened, and who was involved in the alleged denial of his medical care in violation of the Eighth Amendment.

          2.        <u>Refusal of Medical Treatment</u>

"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. . . ." *Cruzan by Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 278 (1990).  However, "determining that a person has a 'liberty interest' under the Due Process Clause does not end the inquiry; 'whether [a plaintiff's] constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests.'" *Cruzan*, 497 U.S. 261, 279 (1990) (footnote omitted) (quoting *Youngberg v. Romero*, 457 U.S. 307, 321 (1982).  Specifically, the Court must consider "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citation omitted); *see also Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (where the Supreme Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing the disease).  In the prison context, "[p]rison administrators have not only an interest in ensuring the safety of prison staff and administrative personnel, but also the duty to take reasonable measures for the prisoners' own safety." *Washington v. Harper*, 494 U.S. 210,

1  225 (1990) (citation omitted).

2  Plaintiff fails to state a claim regarding his right to refuse to submit to COVID-19 testing.
As discussed above, courts have held that prisons have a legitimate, and even compelling, governmental interest in regularly testing prisoners for COVID-19 to meet their obligations to control contagion and to protect other prisoners and staff. *Fialho v. Auld*, No. 2:21-cv-1698 DB P, 2021 WL 4991734, at *4 (E.D. Cal. Oct. 27, 2021) (quoting *Webb v. Johnson*, No. 4:21-cv-3042, 2021 WL 2002712, at *6 (D. Neb. May 19, 2021)). Plaintiff has not identified any harm suffered—whether to his physical health or religious practice—as a result of the required testing or quarantining when testing was refused.

### H. Fourteenth Amendment – Due Process[2]

Plaintiff alleges that he was deprived of due process when he was quarantined after refusing to undergo a COVID-19 test, thus altering his classification status.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

"[A] prisoner has no constitutional right to a particular classification status." *Hernandez v. Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987). However, where a prisoner alleges a dramatic departure from the standard conditions of confinement, federal due process concerns may be implicated. *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995); *see also Keenan v. Hall*, 83 F.3d 1983, 1088-89 (9th Cir. 1996) ("The *Sandin* Court seems to suggest that a major difference between the conditions for the general population and the segregated population triggers a right to a hearing."), citing *Sandin*, 515 U.S. at 485; *see also Marsh v. City of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) ("To violate substantive due process, the alleged conduct must 'shock( ) the conscience' and 'offend the community's sense of fair play and decency.' "), quoting *Rochin v.*

---

[2] Plaintiff attempts to bring a claim under the Due Process Clause of the Fifth Amendment, but the Fourteenth Amendment applies in an action against a state or state actor.

*California*, 342 U.S. 165, 172–73 (1952).

Plaintiff fails to state a cognizable claim for violation of his due process rights. Plaintiff has not alleged that there was any difference between the conditions for quarantined and non-quarantined inmates that would trigger a due process concern.

### I.     1836 United States-Morocco Treaty of Peace and Friendship

Claims based on the violation of the Treaty of Peace and Friendship have repeatedly been found to be frivolous. *See Bey v. Linder*, No. 2:19-cv-1745 TLN DB PS, 2020 WL 5110357 (E.D. Cal. Aug. 31, 2020). *See also Ingram El v. Crail*, No. 2:18-cv-1976 MCE EFB PS, 2019 WL 3860192, at *3 (E.D. Cal. Aug. 16, 2019) ("Plaintiff's Moorish citizenship argument is a frivolous attempt to establish diversity jurisdiction where none exits, and the ploy is not new."); *El-Bey v. North Carolina*, No. 5:11-cv-00423-FL, 2012 WL 368374, at *2 (E.D. N.C. Jan. 9, 2012) ("any claim based on the contention that Plaintiffs are not subject to the laws of North Carolina because of their alleged Moorish nationality and the Treaty of Peace and Friendship of 1787 is frivolous"); *El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 558 (D. N.J. 2011) ("a litigant's reliance on any Barbary Treaty, including on the Treaty with Morocco, for the purposes of a civil suit raising claims based on the events that occurred within what is the United States' geographical territory is facially frivolous.").

To the extent Plaintiff bases any of his claims on violations of the 1836 United States-Morocco Treaty of Peace and Friendship, those claims are frivolous and fail to state a cognizable claim for relief.

### J.     Declaratory Relief

To the extent Plaintiff's complaint seeks a declaratory judgment, it is unnecessary. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985). If this action reaches trial and the jury returns

a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### K. Doe Defendants

Plaintiff names several doe defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe. Furthermore, if there are multiple John or Jane Doe defendants who have not yet been identified by name, Plaintiff should distinguish them in his complaint by numbering them so the Court can recognize them as separate individuals.

### IV. Conclusion and Order

For the reasons stated, Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. As Plaintiff is proceeding *pro se*, the Court will grant Plaintiff an opportunity to amend his complaint to cure the above-identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678–79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."

Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order (or file a notice of voluntary dismissal); and
3. **If Plaintiff fails to comply with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.**

IT IS SO ORDERED.

Dated:   **May 16, 2022**              /s/ Barbara A. McAuliffe          _
                                        UNITED STATES MAGISTRATE JUDGE