# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN JEFFERY RICHSON-BEY,<br><br>        Plaintiff,<br><br>    v.<br><br>BELL,<br><br>        Defendant. | Case No. 1:22-cv-00447-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 7)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Sean Jeffery Richson-Bey ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 7.)

**I.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, Corcoran ("CSP – Corcoran") in Corcoran, California, where the events in the first amended complaint are alleged to have occurred. Plaintiff names the following defendants: (1) Celia Bell, Chief Executive/Medical Officer of California Correctional Health Care Services ("CCHCS") at CSP – Corcoran; (2) John Doe, male nurse employed by CCHCS at CSP – Corcoran; and (3) Jane Doe, female nurse employed by CCHCS at CSP – Corcoran. Plaintiff alleges as follows:

CCHCS at CSP – Corcoran administers an express policy and protocols commensurate with guidance and recommendations for quarantines set forth by the Centers for Disease Control and Prevention ("CDC"), "Interim Guidance on Management of Coronavirus Disease in Correctional and Detention Facilities," mandating testing for prisoners exposed, symptomatic, transferred between custody, off-site in excess of twenty-four hours, or exigent/emergency circumstances.

Medical staff generate a prefabricated list of names for testing based on qualifying criteria and are responsible for furnishing notice for tests, preparing and filing notices of care provided or

1  refused verified by the patient, and justification for a determination of further action (i.e.,
2  isolation, quarantine, etc.) if necessary.
3        Under Defendant Celia Bell, CCHCS administers an unexpressed policy, discriminately
4  applied toward prisoners that administrators consider vexatious, providing urgent care contingent
5  upon unlawful demands for testing, subjecting prisoners who test positive to 14-day quarantine,
6  and those uncooperative, 21 days, punitively, notwithstanding the CDC's recommendation of 10
7  days or less.
8        Plaintiff routinely refused random requests for testing with impunity.  Prisoners attending
9  comparable appointments at Golden Eye Care Center were not similarly subject to requests for
10 testing and quarantine for refusal, or an infraction was remedied upon notification.
11 Notwithstanding notice, Plaintiff has been, and will continue to be, subjected to violations of his
12 rights.
13       On November 9, 2021, Plaintiff attended a turn around appointment at Bakersfield Golden
14 Eye Care Center for follow-up care after a preliminary diagnostic.  On November 14, 2021,
15 Plaintiff was approached at cell front by Security & Escort Officer Chacon inquiring if Plaintiff
16 wanted to take a COVID test.  Plaintiff refused.  Soon after her departure from the housing unit
17 with Defendant John Doe, male nurse, in tow, Plaintiff was approached by 3C01 Floor Officer
18 Wright indicating per communication with unidentified CCHCS COVID-19 Command Center
19 personnel, Plaintiff was to be quarantined 21 days, commencing immediately, for refusing to test,
20 notwithstanding nursing staff's failure to comport with express protocol and custody staff's
21 incompetence of medical affairs.
22       Plaintiff was quarantined 15 days (confined to General Population cell, except for
23 shower), no yard, dayroom, phone calls, law library, etc., while General Population inmate
24 program was unaffected.
25       On December 14, 2021, Plaintiff attended follow-up care at Golden Eye Care Center, turn
26 around appointment.  On December 17, 2021, Plaintiff was approached by Defendant John Doe,
27 male nurse, accompanied by 3C01 Floor Officer, inquiring if Plaintiff would test.  Plaintiff
28 requested notice of cause, to which John Doe claimed not to know, and departed after Plaintiff

3

1   then refused.

2   Thereafter, reportedly per CCHCS for refusing to test, Plaintiff was quarantined for 21 days (confined to General Population cell, except for shower), no yard, dayroom, phone calls, etc., while General Population inmate program was unaffected.

On February 22, 2022, Plaintiff attended a turn around appointment at Golden Eye Care Center to repair torn retina in right eye. On February 27, 2022, Plaintiff was approached at cell front by Defendant Jane Doe, female nurse, accompanied by 3C01 Floor Officer Wright, inquiring if Plaintiff would COVID test. Plaintiff requested cause and Defendant Jane Doe claimed not to know. Under threat, duress, and coercion due to previous encounters with nursing staff, Plaintiff demanded a notice of care form to document his consent to test under protest. Defendant Jane Doe retired, purportedly to ascertain notice of cause for the request, and returned informing Plaintiff the test was for an impending court appearance, thereby gaining compliance without further protest. Plaintiff later discovered the asserted cause was a ruse to obtain a sample.

On March 15, 2022, Plaintiff attended a turn around appointment at Golden Eye Care Center for follow up care. On March 20, 2022, Plaintiff was approached at cell front by Defendant Jane Doe, female nurse, accompanied by Security & Escort Officer Ibarra, inquiring if Plaintiff would COVID test. Plaintiff requested cause and was informed it was due to the March 15 appointment. Under threat, duress, and coercion due to previous encounters, Plaintiff requested a notice of care form to document his consent under protest prior to compliance.

On March 21, 2022, Plaintiff was approached by a second unidentified female nurse requesting if Plaintiff would test due to the March 15 appointment. Plaintiff documented refusal on a notice of care form due to the March 20 encounter.

Medical staff refused to identify themselves, but routinely offered the name Celia Bell in response. However, accompanying custody staff were equipped with body cameras.

Plaintiff claims that: (1) medical treatment contingent upon unlawful demands for testing violated his right to medical treatment under the Eighth Amendment; (2) subjection to quarantine for refusing testing violated Plaintiff's right to refuse medical treatment under the Eighth Amendment, Plaintiff's right to due process under the Fifth Amendment, and constituted cruel

4

and unusual punishment under the Eighth Amendment; (3) unlawful demands for testing violated Plaintiff's freedom from unreasonable searches and seizures under the Fourth Amendment and Plaintiff's right to religious freedom under the First Amendment; and (4) failure to protect constituted deliberate indifference to Plaintiff's rights under the Eighth Amendment. Plaintiff also alleges that all of the above claims for relief violated Plaintiff's rights under the 1836 United States-Morocco Treaty of Peace and Friendship.

Plaintiff seeks injunctive relief against each Defendant in their official capacities to terminate the discriminatory practice, compensatory and punitive damages against each Defendant in their individual capacities, a jury trial, and costs.

## III. Discussion

Plaintiff's first amended complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the identified deficiencies.

### A. Federal Rule of Civil Procedure 8

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Although Plaintiff's complaint is short, many of Plaintiff's allegations simply recite the elements of various causes of action without supporting factual allegations, or state in a conclusory fashion that Plaintiff's rights were violated. Plaintiff fails to include factual allegations identifying what happened, which Defendant was involved, and how the actions or inactions of each Defendant violated Plaintiff's rights.

///

**B.     Linkage**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's only factual allegations against Defendant Bell are that she administers an unofficial policy of subjecting prisoners who are considered vexatious and refuse demands for COVID testing to quarantines longer than the CDC's recommended 10-day quarantine period, and that unidentified nurses offered Defendant Bell's name in response to requests to identify themselves. These conclusory allegations are insufficient to link Defendant Bell to any actions or omissions that may have violated Plaintiff's rights.

**C.     Supervisory Liability**

To the extent Plaintiff seeks to hold any Defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &*

*Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915–16 (9th Cir. 2012) (en banc). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

### D. First Amendment – Free Exercise of Religion

Convicted inmates "retain protections afforded by the First Amendment" including the right to "the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith, but an impingement on an inmate's constitutional rights will be upheld "'if it is reasonably related to legitimate penological interests.'" *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Government action substantially burdens the exercise of religion when the action is "oppressive to a significantly great extent." *Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011) (internal quotations and citation omitted). "That is, a 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise." *Id.* (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). "A substantial burden exists where the governmental authority puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (citation omitted).

Plaintiff fails to state a cognizable First Amendment claim. Plaintiff has not alleged that the COVID-19 testing requirement in any way burdened the practice of his religion, much less that it placed a substantial burden on the practice of his religion.

///

///

### E. Fourth Amendment – Searches

"The Fourth Amendment prohibits only unreasonable searches." *Bell v. Wolfish*, 441 U.S. 520, 558 (1979). "Whether a search is reasonable under the Fourth Amendment requires a case-by-case 'balancing of the need for the particular search against the invasion of personal rights that the search entails . . . .' " *Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (quoting *Bell*, 441 U.S. at 559). In reviewing such a claim, the Court must consider " 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place which it is conducted.' " *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (quoting *Bell*, 441 U.S. at 559).

Plaintiff's complaint fails to demonstrate that the institution's requirement of COVID-19 testing (apparently in lieu of a twenty-one-day quarantine) was unreasonable. Plaintiff also does not allege that prison officials conducted these tests—or searches—with an intent to punish or that the searches were unrelated to a legitimate governmental objective. Nor does he make any allegations from which "punitive intent may be inferred." *Byrd*, 629 F.3d at 1140. Plaintiff's conclusory statements that the tests were administered "punitively," without further factual allegations, are insufficient.

Further, courts have held that prisons have a legitimate, and even compelling, governmental interest in regularly testing prisoners for COVID-19 to meet their obligations to control contagion and to protect other prisoners and staff. *Fialho v. Auld*, No. 2:21-cv-1698 DB P, 2021 WL 4991734, at *4 (E.D. Cal. Oct. 27, 2021) (quoting *Webb v. Johnson*, No. 4:21-cv-3042, 2021 WL 2002712, at *6 (D. Neb. May 19, 2021)).

### F. Eighth Amendment

#### 1. Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation

marks omitted).

Plaintiff has not alleged how the requirement that he undergo COVID-19 testing, or be quarantined if he refused testing, violated his Eighth Amendment rights. Nor has Plaintiff identified a serious medical need that was disregarded. Plaintiff fails to state a claim for deliberate indifference to a serious medical need.

### 2. Refusal of Medical Treatment

"[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. . . ." *Cruzan by Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 278 (1990). However, "determining that a person has a 'liberty interest' under the Due Process Clause does not end the inquiry; 'whether [a plaintiff's] constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests.'" *Cruzan*, 497 U.S. 261, 279 (1990) (footnote omitted) (quoting *Youngberg v. Romero*, 457 U.S. 307, 321 (1982). Specifically, the Court must consider "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997) (citation omitted); *see also Jacobson v. Massachusetts*, 197 U.S. 11 (1905) (where the Supreme Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing the disease). In the prison context, "[p]rison administrators have not only an interest in ensuring the safety of prison staff and administrative personnel, but also the duty to take reasonable measures for the prisoners' own safety." *Washington v. Harper*, 494 U.S. 210, 225 (1990) (citation omitted).

Plaintiff fails to state a claim regarding his right to refuse to submit to COVID-19 testing. As discussed above, courts have held that prisons have a legitimate, and even compelling, governmental interest in regularly testing prisoners for COVID-19 to meet their obligations to control contagion and to protect other prisoners and staff. *Fialho v. Auld*, No. 2:21-cv-1698 DB P, 2021 WL 4991734, at *4 (E.D. Cal. Oct. 27, 2021) (quoting *Webb v. Johnson*, No. 4:21-cv-3042, 2021 WL 2002712, at *6 (D. Neb. May 19, 2021)). Plaintiff has not identified any harm

suffered—whether to his physical health or religious practice—as a result of the required testing or quarantining when testing was refused.

### G. Fourteenth Amendment – Due Process[1]

Plaintiff alleges that he was deprived of due process when he was quarantined after refusing to undergo a COVID-19 test.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983).

"[A] prisoner has no constitutional right to a particular classification status." *Hernandez v. Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987). However, where a prisoner alleges a dramatic departure from the standard conditions of confinement, federal due process concerns may be implicated. *Sandin v. Conner*, 515 U.S. 472, 484–86 (1995); *see also Keenan v. Hall*, 83 F.3d 1983, 1088-89 (9th Cir. 1996) ("The *Sandin* Court seems to suggest that a major difference between the conditions for the general population and the segregated population triggers a right to a hearing."), citing *Sandin*, 515 U.S. at 485; *see also Marsh v. City of San Diego*, 680 F.3d 1148, 1154 (9th Cir. 2012) ("To violate substantive due process, the alleged conduct must 'shock( ) the conscience' and 'offend the community's sense of fair play and decency.' "), quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952).

Plaintiff fails to state a cognizable claim for violation of his due process rights. Although Plaintiff alleges that he was treated differently than other General Population inmates during his quarantines because he was confined to his cell and not released for yard, dayroom, phone calls, or the law library, these are not dramatic departures from standard conditions of confinement that would trigger a due process concern. *See Sandin*, 515 U.S. at 485.

///

---

[1] Plaintiff attempts to bring a claim under the Due Process Clause of the Fifth Amendment, but the Fourteenth Amendment applies in an action against a state or state actor.

11

**H.     1836 United States-Morocco Treaty of Peace and Friendship**

Claims based on the violation of the Treaty of Peace and Friendship have repeatedly been found to be frivolous. *See Bey v. Linder*, No. 2:19-cv-1745 TLN DB PS, 2020 WL 5110357 (E.D. Cal. Aug. 31, 2020). *See also Ingram El v. Crail*, No. 2:18-cv-1976 MCE EFB PS, 2019 WL 3860192, at *3 (E.D. Cal. Aug. 16, 2019) ("Plaintiff's Moorish citizenship argument is a frivolous attempt to establish diversity jurisdiction where none exits, and the ploy is not new."); *El-Bey v. North Carolina*, No. 5:11-cv-00423-FL, 2012 WL 368374, at *2 (E.D. N.C. Jan. 9, 2012) ("any claim based on the contention that Plaintiffs are not subject to the laws of North Carolina because of their alleged Moorish nationality and the Treaty of Peace and Friendship of 1787 is frivolous"); *El Ameen Bey v. Stumpf*, 825 F. Supp. 2d 537, 558 (D. N.J. 2011) ("a litigant's reliance on any Barbary Treaty, including on the Treaty with Morocco, for the purposes of a civil suit raising claims based on the events that occurred within what is the United States' geographical territory is facially frivolous.").

To the extent Plaintiff bases any of his claims on violations of the 1836 United States-Morocco Treaty of Peace and Friendship, those claims are frivolous and fail to state a cognizable claim for relief.

**I.     Doe Defendants**

Plaintiff names several doe defendants. "As a general rule, the use of 'John Doe' to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Plaintiff is advised that John Doe or Jane Doe defendants (i.e., unknown defendants) cannot be served by the United States Marshal until Plaintiff has identified them as actual individuals and amended his complaint to substitute names for John Doe or Jane Doe.

**IV.     Conclusion and Recommendation**

For the reasons discussed, the Court finds that Plaintiff has failed to comply with Federal Rule of Civil Procedure 8 and failed to state a cognizable claim for relief. Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a district judge to this action.

Furthermore, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to comply with Federal Rule of Civil Procedure 8 and failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 7, 2022**                             /s/ Barbara A. McAuliffe            _
                                                           UNITED STATES MAGISTRATE JUDGE

13